UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TRACY SPROUS,<br>    *Plaintiff*,<br><br>v.<br><br>JAMES ZAHN, in his individual capacity,<br>    *Defendant*. | Case No. _____<br><br>JURY DEMAND |

# COMPLAINT

## INTRODUCTION

Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983 for damages as well as declaratory relief against Defendant James Zahn, in his individual capacity. This suit arises from the unlawful arrest of Plaintiff for Driving Under the Influence (herein "DUI") under Tennessee Code Annotated ("T.C.A.") § 55-10-401 in 2025.

## PARTIES

1. **Plaintiff Tracy Sprous** is a resident of Nashville, TN and was unlawfully arrested by Tennessee Highway Patrol ("THP") Trooper Zahn and charged with DUI in Williamson County, Tennessee on February 18, 2025.

2. **Defendant James Zahn** is a Trooper with the Tennessee Highway Patrol and is sued in his individual capacity.

## JURISDICTION AND VENUE

3. The Court has jurisdiction under 28 U.S.C. §1331 and 28 U.S.C. §1343(a)(3) because the controversy arises under the U.S. Constitution and 42 U.S.C. §1983.

4. Venue is proper in the Middle District of Tennessee under 28 U.S.C. §1391(b)(2) because the events giving rise to this action occurred within this District.

## FACTUAL ALLEGATIONS

5. Tracy Sprous is a long-term disability case manager for the Lincoln Financial Group who herself suffers from anxiety.

6. Ms. Sprous has worked for Lincoln Financial Group for fifteen years.

7. She is a graduate of the University of Tennessee, where she earned her degree in 1992.

8. Prior to the false arrest at issue in this case, Ms. Sprous had never been charged criminally in her life.

9. At the time of the false arrest in this case, Ms. Sprous was fifty-four years old.

### A. Ms. Sprous Is Falsely Arrested for Driving Under the Influence

10. On the evening of February 18, 2025, Ms. Sprous played pickleball in Brentwood, Tennessee.

11. Ms. Sprous was on her way home, driving north on Interstate 65, when THP Trooper James Zahn began to follow her.

12. Ms. Sprous exited the highway onto Old Hickory Boulevard, heading west, when Trooper Zahn turned on his blue lights to initiate a traffic stop.

13. It was a cold February night and the time was 7:32 PM.

14. At that section of Old Hickory Boulevard, there are five westbound lanes and Ms. Sprous pulled over and stopped in the right-most lane, which is a turn lane.

15. Trooper Zahn approached Ms. Sprous's car from the passenger side and she was already searching for the necessary vehicle documentation, expecting a potential traffic ticket, as he arrived beside her car.

16. Trooper Zahn told Ms. Sprous that he had stopped her for failing to maintain her lane

while on the interstate.[1]

17. Trooper Zahn asked Ms. Sprous "where [she was] coming from?" and she told him that she had been playing pickleball.

18. Her pickleball gym bag was visible in the passenger seat and she was still wearing her workout clothes.

19. Within thirty seconds of making contact with Ms. Sprous, Trooper Zahn then asked her if she had had "anything to drink or [she had] taken any medications."

20. Ms. Sprous explained that she had not.

21. Trooper Zahn accused Ms. Sprous of having "stopped in the middle of the road", a mischaracterization of her having pulled over to the right-most lane of five, and Ms. Sprous responded that she was simply obeying his command to pull over.

22. Trooper Zahn returned to his patrol car after getting Ms. Sprous's driver's license to run her information through his car computer.

23. When Trooper Zahn returned to Ms. Sprous's passenger side window, he tested her by again asking her where she had come from.

24. She clearly explained that she had been playing pickleball at a Brentwood recreation center and gave directions for how one would arrive there, driving.

25. Trooper Zahn again asked Ms. Sprous if she had had anything to drink and she again told him, truthfully, "No."

26. Trooper Zahn then asked her if she "ever" drinks, and she told him that she had last had red wine about three weeks ago.

27. Next, Trooper Zahn pressed Ms. Sprous about whether she took any medications, and she

---

[1] Trooper Zahn initiated his body-worn and dashboard cameras shortly before he stopped Ms. Sprous on Old Hickory Boulevard. So while there is footage of the stop and arrest at issue in this case, Trooper Zahn did not record any of the alleged Interstate driving that was the basis for his stop.

disclosed to him that she took Xanax for her anxiety.

28. After this minimal interaction and questioning of Ms. Sprous, Trooper Zahn asked her to "step[] out and do[] a few tests so I know you're safe to drive."

29. At this point, Ms. Sprous was in the grip of extreme anxiety, since she did not understand why she was being asked to exit her vehicle during a simple, routine traffic stop for an alleged ticketable driving violation.

30. Even with Trooper Zahn's minimal questioning, Ms. Sprous had already put him on notice that she suffered from anxiety and took medication for that.

31. Despite her clear, visible signs of growing anxiety, Trooper Zahn failed to account for it at any time leading up to his decision to arrest Ms. Sprous.

32. Trooper Zahn claimed that Ms. Sprous was "unsteady" in getting out of her car when she, in fact, clearly and cogently asked if it was "safe" to step out of her car before doing so normally.

33. Once she had gotten out, Trooper Zahn asked Ms. Sprous to perform SFSTs and she agreed.

34. Trooper Zahn would later support his arrest decision, in part, on the allegation that Ms. Sprous's eyes were "bloodshot/red" and "watery" but that is plainly contradicted by his body-worn camera footage showing Ms. Sprous as she began to perform the SFSTs.

35. Trooper Zahn had Ms. Sprous perform at least five separate SFSTs over the course of ten minutes or so.

36. By the time that Ms. Sprous performed one of the last tests, the "finger dexterity test", she was audibly and visibly holding back tears.

37. At just after 7:50 PM, Trooper Zahn placed her under arrest for driving under the influence by T.C.A. § 55-10-401 and failing to maintain her lane by § 55-8-123.

38. The "Alcohol/Drug Influence Report" that Trooper Zahn later filled out had a sub-section for "Demeanor" with checkboxes for "Nervous/Anxious" and "Preoccupied", neither of which was marked by Trooper Zahn.

39. Ms. Sprous requested that she be allowed to prove her sobriety via a breathalyzer test and was told that "we don't do that in Tennessee".

40. Unable to contain her anxiety, Ms. Sprous began to cry.

41. A few minutes later, Trooper Zahn read an implied consent form request for a blood sample to Ms. Sprous as she was seated in the back of his patrol car.

42. She agreed even as she was then crying uncontrollably.

43. After calling for a tow truck to take Ms. Sprous's car, Trooper Zahn drove her to the hospital for a blood draw.

44. There was little to no conversation or questions as they went to the hospital, hospital staff performed a blood draw on Ms. Sprous, or as Trooper Zahn took Ms. Sprous to the Williamson County jail afterwards.

45. They arrived at the jail at around 9:20 PM.

46. Trooper Zahn let Ms. Sprous use her cell phone to call her father.

47. She explained to her father that she'd been arrested, again fighting back tears, and told him that the accusation that she had been driving under the influence was untrue.

48. Ms. Sprous remained in jail until around 2:30 AM, when a family member was able to make a $2,500 bond to get her out.

### B. After Nearly Three Months, the Criminal Charges Against Ms. Sprous Are Dropped

49. Ms. Sprous retained an attorney to defend her against the criminal charges, paying him $5,500 for the representation.

50. Ms. Sprous's blood samples were submitted to the Tennessee Bureau of Investigation ("TBI") on February 25, 2025 for testing.

51. A March 5, 2025 TBI test showed that there was no alcohol in Ms. Sprous's blood sample.

52. An April, 3 2025 TBI test for ten classes of controlled substances showed that the only substance present in Ms. Sprous's blood sample was Alprazolam, sold under the brand name Xanax.

53. The Alprazolam concentration in Ms. Sprous's blood sample was 15 ng/mL, well within the normal, healthy reference range for that prescription.

54. Finally, on May 7, 2025 the criminal charges against Ms. Sprous were dropped, with the District Attorney's office entering a *nolle prosequi* judgment.

### C. **A Documented Pattern of Falsely Arresting Sober Drivers by THP and Trooper Zahn**

55. Following her arrest, Ms. Sprous has learned that Trooper Zahn has a history and demonstrated pattern of falsely arresting sober drivers and charging them with driving under the influence.

56. Trooper Zahn worked two stints for the Williamson County Sheriff's Office ("WCSO") before joining THP.

57. Trooper Zahn had resigned at the end of 2021 from his position with the WCSO due in part to being passed over for a promotion, calling the promotion process "a joke" and complaining that his ability to competently swear out felony warrants had been questioned and undermined by the WCSO.

58. Trooper Zahn has admitted in his WSCO Background Questionnaire that he himself had

driven drunk "2-3 times" such that he could have been arrested.

59. August 2025 reporting by WSMV's Jeremy Finley uncovered that Trooper Zahn had made eight arrests of sober drivers for DUI, including Ms. Sprous's case.

60. The full extent of how many arrests that Trooper Zahn has made of sober drivers for DUI is currently unknown and perhaps unknowable.

61. Trooper Zahn's record of false DUI arrests is part of a larger pattern of false DUI arrests by THP.

62. Public reporting indicates that THP has an official or semi-official quota system for officers to make DUI arrests or face reprimand.[2]

63. TBI reporting for the year 2024 documented 419 DUI cases in Tennessee where testing of the accused showed zero alcohol or detectable drugs.

64. Of those 419 arrests, THP was responsible for 190 of them.

## CAUSE OF ACTIONS

### COUNT I
### False Arrest in Violation of the Fourth Amendment
### (42 U.S.C. § 1983)

65. Plaintiff realleges and incorporates by reference the allegations set forth above.

66. Trooper Zahn falsely arrested Ms. Sprous on February 18, 2025.

67. The false arrest of Plaintiff was a deprivation of her civil rights to be free from arrest without necessary probable cause under the Fourth Amendment.

68. Defendant operated under the color of state law when he arrested Plaintiff.

69. Defendant lacked probable cause to believe Plaintiff had violated T.C.A. § 55-10-401.

---

[2] *Former Tennessee Highway Patrol troopers say DUI quotas led to arrests of sober drivers*, **WSMV-TV (Nashville)** (Oct. 27, 2025), https://www.wsmv.com/2025/10/27/former-tennessee-troopers-say-dui-quotas-led-arrests-sober-drivers/

70. Defendant's false arrest of Plaintiff deprived her of her liberty.

71. Defendant's false arrest was in reckless disregard of Plaintiff's rights.

72. Defendant's false arrest damaged Plaintiff by depriving her of her liberty, inflicted emotional distress, and caused financial and reputational damage.

## COUNT II
### Malicious Prosecution in Violation of the Fourth Amendment
### (42 U.S.C. § 1983)

73. Plaintiff realleges and incorporates by reference the allegations set forth above.

74. On January 24, 2025, Defendant falsely charged Plaintiff with DUI under T.C.A. § 55-10-401.

75. The false charge deprived Ms. Sprous of her liberty by causing her to be jailed for 5 hours before making bond and being released from jail.

76. Defendant was acting under the color of state law when he initiated the false charge against Ms. Sprous.

77. Defendant initiated the false charge in reckless disregard of Ms. Sprous's rights.

78. The false charges were resolved in Ms. Sprous's favor on May 7, 2025, with entry of a *nolle prosequi*.

79. The false charges deprived Plaintiff of her liberty, inflicted emotional distress, and caused financial and reputational harm.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that:

1. The Defendant Answer this Complaint within the time period provided by law.

2. That this cause be tried by a jury.

3. That judgment for Plaintiff enters against the Defendant on each count.

4. That Plaintiff be awarded compensatory damages against the Defendant in an amount to be determined by a jury.

5. Nominal damages against Defendant on all counts.

6. That Plaintiff be awarded punitive damages in an amount to be decided by a jury.

7. Attorneys' fees and costs of suit as provided by 42 U.S.C. §1988.

8. Court costs.

9. Pre- and post-judgment interest at the legal rate.

10. The Court award Plaintiff such further relief as the case may require and the Court may deem just and proper under the circumstances.

Dated: February 17, 2026

*/s/ Aaron Rothbaum*
Aaron Rothbaum, BPR 36572
Kyle Mothershead, BPR 22953
**RELENTLESS ADVOCACY, PLLC**
7000 Executive Center Dr., Suite 240
Brentwood, TN 37027
Telephone: (615)891-3901
aaron@relentlesslaw.com
kyle@relentlesslaw.com

*/s/ Tricia R. Herzfeld*
Tricia R. Herzfeld (BPR #26014)
Benjamin A. Gastel (BPR #28699)
Stella M. Yarbrough (BPR #33637)
**HERZFELD SUETHOLZ GASTEL LENISKI AND WALL, PLLC**
1920 Adelicia St., Suite 300
Nashville, TN, 37212
Telephone: (615) 800-6225
tricia@hsglawgroup.com
ben@hsglawgroup.com
stella@hsglawgroup.com

*Attorneys for Plaintiff*